**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-2295-WJM

GERALDINE WILLIS, on behalf of minor child M.A.W.

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security

    Defendant.

---

**ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE**

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Geraldine Willis, on behalf of her minor child M.A.W., ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), revoking M.A.W.'s award of social security benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

For the reasons set forth below, the Court affirms the ALJ's finding that M.A.W. was not disabled as of September 30, 2006.

## I. DISABILITY PROCESS FOR A CHILD APPLICANT

Disability for persons under the age of 18 is defined by the Act as "a medically determinable physical or mental impairment or combination of impairments that causes

marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.  Social Security regulations implement a three-step sequential process to evaluate a claim for a child's Supplemental Security Income Benefits under Title XVI of the Act.  *See* 20 C.F.R. § 416.924.  At step one, a child will not be deemed disabled if he is working and such work constitutes substantial gainful activity.  At step two, a child will not be found disabled if he does not suffer from a medically determinable impairment that is severe.  At step three, a child's impairment must meet a listing (or be a medical or functional equivalent) and must meet the duration requirement of 12 months. 20 C.F.R. § 416.924(b), (c) and (d).  M.A.W. was found to be disabled under this three-step process in 1999.

Where, as here, a child has previously been found to be disabled under the Social Security regulations, continued eligibility for benefits must be reviewed periodically.  20 C.F.R. § 416.944a(a).  The Commissioner must first determine whether there has been medical improvement in the child's condition.  If there has been no medical improvement, the child is found to be still disabled.  *Id*. at 416.944a(a)(1).  If there has been a medical improvement, the agency evaluates whether the child's impairment(s) still meet or equal the severity of the listed impairment that it met or equaled before.  If it does, the child is found to still be disabled. *Id*.  If the impairment no longer meets or equals the severity of the listed impairment, the agency proceeds determine whether the child's impairment(s) meet or medically or functionally equal a

listing. *Id*.

A "functionally equivalent" impairment means that the impairment must be of listing level severity, *i.e.*, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning that are considered are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1).

A child will be considered to have a "marked" limitation in a domain when the impairment(s) interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. The claimant's day-to-day functioning may be seriously limited when his/her impairment(s) limits only one activity or when the interactive and cumulative effects of his/her impairment(s) limit several activities. Marked limitation also means a limitation that is more than moderate but less than extreme. 20 C.F.R. § 416.926a(e)(2).

## II. BACKGROUND

M.A.W. was born in August 1992. In fall 1998, when M.A.W. was in first grade, he was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and started on medication. (A.R. 226.) His teachers noted that he was impulsive and disruptive in class, did not seem to understand the consequences of his actions, was failing reading and writing, and had severe deficits in social skills compared with other children his

age.  (A.R. 235-36.)  An Individualized Education Plan ("IEP") was developed for M.A.W. in early 1999.  (A.R. 200.)  During that process, the evaluator noted that M.A.W. had severe processing and attention problems, that his emotional development was delayed by two years, and that the day-long expectations of first grade were overwhelming for him.  (A.R. 208.)

Plaintiff filed for disability benefits for M.A.W.  A consultative psychologist diagnosed M.A.W. with ADHD and borderline intellectual functioning.  The psychologist noted that M.A.W.'s hyperactivity and lack of focus made it difficult to test him, but arrived at an I.Q. of 79.  (A.R. 246.)  Based on this exam, Dr. Hanze, a medical consultant for Social Security Administration, found that M.A.W. had the following impairments: (1) ADHD; and (2) borderline intellectual functioning.  The consultant found that his impairments met Listing 112.11—Attention Deficit Hyperactivity Disorder—and, therefore, he was entitled to disability benefits.  (A.R. 182, 185.)

Over the next few years, M.A.W.'s physicians tinkered with his dosage of ADHD medication.  (A.R. 270-81.)  M.A.W. was placed in special education classes and was soon able to work at grade level.  (A.R. 261-67.)  However, M.A.W. still needed a lot of one-on-one attention and had difficultly with aggression, attention, low adaptability, and social skills.  (*Id.*)  M.A.W.'s teachers noted that, when he did not take his medication, M.A.W. was very difficult to control.  (A.R. 255.)

M.A.W.'s disability status came up for review in 2006.  (A.R. 186-91.)  M.A.W.'s teachers completed assessments and stated that M.A.W.'s behavior had improved

tremendously when he was properly medicated.  (A.R. 312-31, 160.)  One of M.A.W.'s teachers wrote: "Now that he is on his medication he is able to focus, listen, work independently, etc.  This has made a huge impact on his academic performance."  (A.R. 160.)

At the Commissioner's request, Dr. Kutz, a consultative psychologist, performed an evaluation.  (A.R. 289-93.)  During the exam, Plaintiff reported that M.A.W.'s behavior is better, particularly at school, and that he is not a severe behavioral problem at home.  Plaintiff reported that M.A.W. had "no highly significant behavioral problems at school last year."  (A.R. 290.)  Dr. Kutz advised that M.A.W.'s attention and concentration were "fair to poor" and that his intellectual functioning was in the "low average range."  (A.R. 291-92.)  However, Dr. Kutz was unable to get a valid IQ score because M.A.W. was not cooperative.  (*Id*.)  Overall, Dr. Kutz stated that M.A.W. "has shown some significant improvement."  (A.R. 293.)

In July 2006, Dr. Hanze again reviewed the evidence in M.A.W.'s file and found that M.A.W. had improved medically since 1999 with the assistance of medication.  (A.R. 191.)  Dr. Hanze noted that M.A.W. was working at grade level in school and that, with medication, his attention problems were not significant.  (*Id*.)  Ultimately, Dr. Hanze found that M.A.W.'s impairments had improved to the point that they no longer equaled or were medically or functionally equivalent to the listings.  (A.R. 186.)

Plaintiff appealed Dr. Hanze's findings contending that M.A.W.'s medical condition had not improved.  (A.R. 167-71.)  M.A.W.'s teachers completed reports

showing that his behavior was worse than most students his age. (A.R. 295-98.) He was rated at "far below" (the lowest rating) in most attention-related categories and "below" or "slightly below" average in the social-related categories. (*Id*.) Plaintiff submitted periodic "Function Reports" stating that M.A.W. was struggling at home, even with medication, and that his medication did not tend to hold him through the day. (A.R. 158, 167-71, 174-80.) M.A.W.'s medication was increased in spring 2007. (A.R. 158.)

When M.A.W. started high school in fall 2008, an IEP was developed. (A.R. 341-44.) The evaluators noted that M.A.W. was struggling with the transition to high school but had good relationships with his teachers and peers. (A.R. 341.) They found his language skills to be just below average and his higher and lower level reasoning skills to be "less well developed than his peers." (A.R. 342-44.) M.A.W.'s medication was again increased in January 2009. (A.R. 309.)

On April 6, 2009, Administrative Law Judge ("ALJ") Marsha Stroup held a hearing on Plaintiff's appeal. (A.R. 411.) Plaintiff, M.A.W., and Dr. Robert Pelc, a non-treating psychologist, testified at the hearing. (A.R. 412.) M.A.W. testified that he was in regular (not special education) classes, that he played varsity football and basketball, and had friends in all of his classes. (A.R. 417-20.) M.A.W. admitted that he had struggled in school but stated that, in the current semester, he had "a couple of As, couple Bs, couple Cs. No Fs this semester." (A.R. 422.) Plaintiff testified that M.A.W. "exaggerates a lot", that he hangs out with members of the school's teams but does not get to play because of his grades, and that he does not do anything at school. (A.R.

420-21.) Plaintiff testified that M.A.W. was "all failing" at school and that "he's never passed a grade." (A.R. 421.) At the hearing, Plaintiff and his mother frequently contradicted each other and argued to the extent that the ALJ recommended they seek family counseling to learn how to better deal with each other. (A.R. 428.)

Dr. Pelc testified that he had never examined M.A.W. but he reviewed the entire Social Security file. (A.R. 431.) Dr. Pelc noted that M.A.W.'s principal problem area was social interaction and that, as long as M.A.W. takes his medication, "he seems to be better in terms of his ability to avoid distractions and to maintain reasonable attention and concentration." (A.R. 432.) Dr. Pelc ultimately found that M.A.W.'s impairments did not meet or equal the Social Security listings. (A.R. 433.) The ALJ took the case under advisement and informed Plaintiff that a decision would be issued within sixty days. (A.R. 435-36.)

The ALJ issued her opinion on April 24, 2009. (A.R. 19-33.) She found that M.A.W. had medical improvement as of September 30, 2006. (A.R. 22.) At step two, the ALJ found that M.A.W. suffered from the following severe medically determinable impairments: attention deficit hyperactivity disorder ("ADHD"), borderline intellectual functioning, and oppositional defiant disorder ("ODD"). (A.R. 30.) At step three, the ALJ found that, since September 30, 2006, these impairments did not meet or medically equal any of the listed impairments and were not functionally equivalent to the listings. (*Id.* at 24-25; 30.)

The ALJ found that M.A.W.'s impairments resulted in the following: (1) a marked

limitation in the domain of attending and completing tasks; (2) a less than marked limitation in the domains of acquiring and using information, interacting and relating to others; and (3) no limitation in the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being. (A.R. 31-32.) Because the ALJ did not find any extreme limitations and found a marked limitation in only one domain, the ALJ found that M.A.W.'s disability ended as of September 30, 2006. (*Id*. at 32.)

Plaintiff appealed the ALJ's ruling to the Social Security Appeals Counsel. (A.R. 14.) Plaintiff submitted additional evidence from post-April 2009 showing that M.A.W. continued to struggle in school. (A.R. 348-59.) M.A.W. began counseling in June 2009 and his counselor noted that he was "hyperactive and excessively fidgety." (A.R. 384.) In fall 2009, M.A.W.'s teachers reported that he "often" or "very often" needed assistance with maintaining focus and was easily distractable. (A.R. 404-408.) They stated that he had an average relationship with his peers but was problematic with respect to disrupting class and completing his assignments. (*Id*.) Even with this additional evidence, the Appeals Counsel "found no reason . . . to review the Administrative Law Judge's decision." (A.R. 5.) Therefore, the ALJ's decision is the final decision of the Commissioner. (*Id*.)

### III. STANDARD OF REVIEW

The Court reviews the Commissioner's decision on Plaintiff's entitlement to disability benefits to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.

*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

## IV.  ANALYSIS

In her appeal, Plaintiff puts forth the following arguments: (1) there was not substantial evidence to support the ALJ's finding that M.A.W.'s impairments had medically improved since 1999; (2) the ALJ failed to sufficiently link her credibility determination of Plaintiff's testimony to the evidence in the record; (3) the ALJ erred as a matter of law in her application of the functional equivalence doctrine; and (4) there was not substantial evidence to support the ALJ's finding of a less than marked limitation in the domain of interacting and relating to others. (ECF No. 11.) The Court will address each argument in turn below.

**A.    ALJ's Finding of Medical Improvement**

Plaintiff contends that the ALJ should have found that there was no medical improvement in M.A.W.'s impairments between 1999 and September 30, 2006. (ECF No. 11 at 20-21.) Plaintiff argues that M.A.W.'s medical condition was less controlled in

2006 than 1999.  (*Id.* at 21.)

The ALJ found that "as of September 30, 2006, there had been a decrease in medical severity of the impairments present" in 1999.  (A.R. 23.)  The ALJ noted that, before commencing medication, M.A.W. could not sit still for even two minutes.  However, on medication, M.A.W. was "able to concentrate, listen, work in groups and independently, and complete assignments."  (*Id.*)

The evidence supports the ALJ's finding.  The record shows that, in 1999, teachers reported that M.A.W. was working below grade level and recommended that he repeat the first grade.  (A.R. 234-36.)  In 2006, he was working at grade level and able to participate actively in class.  (A.R. 166, 312-13.)  In 1999, M.A.W. reportedly did not have friends at school, did not understand how his behavior affected others, and did not take responsibility for his action.  (A.R. 208.)  In 2006 and thereafter, it was repeatedly reported that M.A.W. had many friends and had good relationships with his peers and his teachers.  (*E.g.*, A.R. 341.)  In 1999, M.A.W. was often in trouble at school.  (A.R. 208.)  In 2006, Plaintiff reported that M.A.W. had "no significant behavior problems at school.  (A.R. 290.)

In arguing that there was not substantial evidence for the ALJ's finding of medical improvement, Plaintiff points to her testimony at the hearing that M.A.W.'s symptoms were still very bad at home and that she often had to give him medication to calm him down at night.  (ECF No. 11 at 21.)  However, the ALJ's finding regarding medical improvement is not erroneous simply because there is some evidence in the

record which would indicate that M.A.W. had not medically improved.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."); *Peterson v. Astrue*, 2009 WL 1504734, at *6 (D. Kan. May 27, 2009) ("The mere fact that there is some evidence which might support a finding contrary to the ALJ's will not establish error.").  The Court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007).

Having reviewed the record, the Court finds that there is sufficient evidence in such that a reasonable person could conclude that M.A.W. had medically improved as of September 30, 2006.  Accordingly, the Court concludes that the ALJ's finding of medical improvement was not erroneous.  *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348 (10th Cir. 1990).

**B.     The ALJ's Credibility Finding**

Plaintiff asserts that the ALJ erred in failing to adequately link the evidence in the record to her credibility determination with respect to the claimant.  (ECF No. 11 at 27-28.)  An ALJ's credibility determinations are generally treated as binding on review because "[c]redibility determinations are peculiarly the province of the finder of fact." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Therefore, in reviewing the ALJ's credibility determinations, the Court will usually "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess

witness credibility." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

Both M.A.W. and his mother testified at the hearing before the ALJ. (A.R. 23.) M.A.W.'s mother testified that his limitations with regard to social functioning were quite significant. For example, she testified that M.A.W. only had one friend that she knew of, that he had a "bad attitude", and that he picked on his siblings. (*Id*.) The ALJ found that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not credible for the period since September 30, 2006, to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below." (A.R. 31.)

Plaintiff contends that this was erroneous because the ALJ failed to give reasons for her credibility determination. (ECF No. 11 at 27-28.) The Court disagrees. In a section preceding the above-quoted credibility finding, the ALJ noted that "[M.A.W.] and his mother disagreed frequently at the hearing—or were evasive—making it difficult to get conclusive answers to some questions." (A.R. 23.) Because the ALJ was in the unique position of observing both M.A.W. and his mother's testimony, the Court is not a position to second-guess this finding. *See Casias*, 933 F.2d at 801 (court should defer to ALJ's credibility finding as the ALJ is "the individual optimally positioned to observe

and assess witness credibility.").

Moreover, in the section following the ALJ's credibility finding, the ALJ described the evidence that was contrary to M.A.W.'s mother's testimony, including a psychologist's report showing that M.A.W. "gets along well with peers and teachers." (A.R. 32.) The ALJ found that the evidence overall showed that M.A.W. "functions well socially most of the time." (*Id.*) Finally, the ALJ noted that "[t]he biggest problems in social functioning appear to be conflict with his mother." (*Id.*) All of this evidence supports the ALJ's credibility finding.

The Court finds that the ALJ's credibility finding is sufficiently linked to the evidence in the record and is not just a conclusion in the guise of a finding. Accordingly, Plaintiff's argument that the ALJ erred with respect to her credibility determination is rejected.

**C.      ALJ's Application of the Functional Equivalence Doctrine**

The social security regulations provide that the functional equivalence to a listed impairment be evaluated using the "Whole Child" approach, which requires consideration of "how the child functions every day and in all settings compared to other children the same age who do not have impairments." Social Security Ruling 09–1p. The "Whole Child" approach provides that the ALJ "must consider the particular effects of a child's impairment(s) on the child's activities in any and all of the domains that the child uses to do those activities, based on the evidence on the case record." *Id.* "[R]ating the limitations caused by a child's impairment(s) in each and ever domain that

is affected is not double-weighting of either the impairment(s) or its effects.  Rather, it recognizes the particular effects of the child's impairment(s) in all domains involved in the child's limited activities."  Social Security Ruling 09-05p.

Plaintiff contends that the ALJ violated the "Whole Child" approach by considering M.A.W.'s limitations only with respect to the domain of attending and completing tasks and not the domain of interacting and relating with others.  (ECF No. 11 at 26.)  However, the record does not support this argument.  (A.R. 27 & 31-32.)  The ALJ's reasoning shows that she considered his impairments in both domains of limitation.

In support of her argument, Plaintiff primarily relies on the ALJ's statement that: "When considering the While [sic] Child approach, the claimant's symptoms are adequately addressed with a marked limit in Attending and Completing Tasks, and a less marked in Interacting and Relating with Others."  (A.R. 32.)  Despite Plaintiff's argument to the contrary, the Court does not find that this comment indicates that the ALJ did not consider M.A.W.'s limitations in all relevant domains.  Rather, the ALJ was distinguishing her findings from those of Dr. Pelc, who testified that he believed M.A.W. had a marked limitation in interacting and relating to others and a less than marked limitation in attending and completing tasks.  (A.R. 32.)  The statement set forth above came in the context of discussing Dr. Pelc's testimony and the Court finds that the ALJ was simply explaining why she felt that M.A.W.'s marked limitation should be in the domain of attending and completing tasks instead of interacting and relating to others,

as Dr. Pelc recommended.

Having reviewed the record, the Court finds that the ALJ properly applied the Whole Child doctrine by considering M.A.W.'s impairments with respect to each domain of functioning. Accordingly, the Court sees no reason to reject the ALJ's opinion on this basis.

D.     **Substantial Evidence for Limitation Findings**

Plaintiff contends that there was not substantial evidence to support the ALJ's finding of a less than marked limitation in the domain of interacting and relating to others. (ECF No. 11 at 25-26.)

Plaintiff first argues that the ALJ erred by disagreeing with Dr. Pelc without contrary expert evidence. (*Id*.) However, Social Security regulations make it clear that the ALJ has the responsibility for determining medical and functional equivalence. 20 C.F.R. § 416.926(e); 416.926a(n). Thus, any medical or expert testimony on the subject is advisory and the ALJ did not need contrary expert testimony to assess her own limitations. *See Smith v. Astrue*, 2009 WL 3186660, *4 (S.D. W.Va. Sept. 30, 2009) (ALJ is ultimate decision-maker with respect to assessing limitations).

Plaintiff next argues that "[t]he evidence as a whole supports" a finding that M.A.W. has a marked limitation in the domain of interacting and relating with others. (ECF No. 11 at 25.) In support of this argument, Plaintiff points to various pieces of evidence in the record showing that M.A.W. has had difficulties getting along well with his peers and his family. (*Id*. at 25-26.) The Court acknowledges that the evidence

cited by Plaintiff is in the record; however, there is also evidence in the record showing that M.A.W. has "good relationships" with his teachers and peers.  (A.R. 348.)  It is abundantly clear from the record that M.A.W.'s ability to engage and interact with his peers is highly dependent on whether he takes his ADHD medication as prescribed. Because of the evidence that M.A.W. forgets to take his medication on a semi-regular basis, it is unsurprising that he would have incidents of discord with others in his record.

"[T]he question on substantial evidence review is not whether the Court agrees with the [adjudicator's] decision, but whether sufficient evidence supports the decision so that a reasonable mind could come to the same conclusion."  *T-Mobile Central, LLC v. Unified Gov't of Wyandotte Cty.*, 546 F.3d 1299, 1311 (10th Cir. 2008).  Plaintiff's argument regarding the ALJ's finding of a less than marked limitation with respect to M.A.W.'s social functioning essentially asks the Court to view the conflicting and contrary evidence and arrive at a different result than the ALJ.  Having reviewed the record, the Court finds that a reasonable mind could arrive at the same result as the ALJ.  Therefore, the Court finds that there is substantial evidence to support the ALJ's finding that M.A.W. is not disabled.

## V.  CONCLUSION

For the reasons set forth above, the Commissioner's denial of benefits to M.A.W. is AFFIRMED.

Dated this 8th day of May, 2012.

BY THE COURT:

William J. Martinez
United States District Judge